Maria Salapska (#019585)
LAW OFFICE OF MARIA SALAPSKA, PLLC
3001 East Camelback Road, Suite 120
Phoenix, Arizona 85016
Telephone: (480) 626-5597
Facsimile: (480) 393-5083
*msalapska@salapskalaw.com*

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Michael L. Shoen, a resident of Arizona, | No. 2:09-cv-01548-DGC |
| Plaintiff, | |
| v. | **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Richard Symons, a resident of Great Britain; Spirit Level Films, a British film distributing entity; John Doe 1-10 and Jane Doe 1-10; ABC Partnership 1-10; and XYZ Corporation 1-10, | |
| Defendants. | |

Currently pending is Defendants' motion for summary judgment on all claims [Doc. # 47] (the "Motion"). The Motion should be denied for several reasons, each of them independently sufficient to deny the Motion. Specifically, arguments Defendants make in support of their Motion are barred by the doctrines of waiver, estoppel and laches as well as issue preclusion and/or *res judicata*.[1] In addition, Defendants' Motion is procedurally flawed in that it makes claims and seeks remedies that Defendants should

---

[1] The test of laches is unreasonable delay and prejudice to the other party. *Gardner v. Panama R. Co.,* 342 U.S. 29, 30-31, 72 S.Ct. 12, 13, 96 L.Ed. (1951) 31; *Cities Service Oil Co. v. Puerto Rico Lighterage Co.,* 305 F. 2d 170, 171 (1st Cir. 1952) (both unreasonable delay and consequent prejudice).

1   have, at minimum, made and alleged in their Answer to the Verified Complaint (the
2   "Complaint"), but they failed to do it.

3          It is undisputed that the parties entered into a contract (Stipulation For Permanent
4   Injunction (the "Stipulation")) in 2007. On March 23, 2007, that contract was reduced to
5   Permanent Injunction ("Injunction") by this Court's order. (Case No. 2:06-cv-03008-
6   DGC; *Shoen v. Symons et al.* ("2006 case").)

7          By entering into the Stipulation, Defendants conceded the bases for the request for
8   permanent injunction asserted by Plaintiff, Michael Shoen ("Plaintiff" or "Michael
9   Shoen") in the 2006 case.  Defendants should not be allowed to vacate the Injunction and
10  contest the merits of the 2006 case, close to four years after its adjudicated conclusion.
11  Also, any compulsory counterclaims should have been alleged in the 2006 case.

12         It is also not disputed that Defendants breached the terms of the Stipulation and
13  Injunction.  Defendants do not deny that they used the enjoined phrase "The Cobra-
14  Ferrari Wars" post-Injunction.  [Defs' SOF 25]  But they assert that the breaches were
15  "*de minimis*."  [*Id*.] Whether they were *de minimis* (Plaintiff asserts they were not, *see*
16  Pl's SSOF 16) and—if they were—whether that would excuse the breaches is for the
17  Court to decide.

18         Further, Defendants allege that Plaintiff's Lanham Act and unfair competition
19  claims should be dismissed  because Defendants did not copy verbatim Plaintiff's book
20  THE COBRA-FERRARI WARS into their DVD (initially titled the same as Plaintiff's book
21  and, after the 2007 Injunction, re-titled "The Snake and the Stallion" (the "DVD") and
22  the phrase "The Cobra-Ferrari Wars" was not a registered trademark.

23         Because the book and the DVD are two different media of expression, the courts
24  addressing the similarities and infringement of one by the other engage in extensive
25  **factual** analysis.[2]  It is possible to prove infringement by establishing that the "total
26

27  ───────────────
    [2] *See, e.g.*, *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, (2d Cir. 1936)
28  (plaintiff's play, "Dishonored Lady," held infringed by the motion picture, "Letty
    Lynton"); Stodart v. Mutual Film Corp.,  (DC NY 1917), *aff'd without opinion* 249 F.

concept and feel" of the two works is similar.  *See Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1167 (9th Cir.1977).    *See also Capital Films Corp. v Charles Fries Productions, Inc.*, 628 F.2d 387   (5th Cir. 1980) (trial court erred in determining that motion picture title "The Trial of Lee Harvey Oswald" did not constitute sufficiently novel idea to deserve protection as property right without leaving such issue to jury, where movie production company and television broadcaster produced and televised movie by same title which basically depicted same theme.)  And, that the trademark was not registered, does not change the fact that it may be protected under the Lanham Act.   15 U.S.C. § 1125(a).

In his Complaint in this matter, Plaintiff pled alternative remedies of damages and rescission.  Plaintiff now forgoes rescission and requests only specific performance of the 2007 Stipulation and Injunction, with compensatory and incidental damages, including attorney fees and costs.

The only issue before the Court on Defendants' pending Motion should be whether the Injunction has been violated, in breach of the parties' 2007 Stipulation.   If the answer to this question is in the affirmative, Plaintiff—and not Defendants—is entitled to judgment as a matter of law.  *See Celotex Corp. v.Catrett*, 477 U.S. 317, 326 (1986) (court is free to enter summary judgment for a non-moving party if circumstances so warrant and the party against whom the judgment is entered has an opportunity to present all its relevant evidence).    Thus, the Court is free to enter partial summary judgment on breach of contract claim and award attendant remedies to Plaintiff.

Michael Shoen hereby submits this Response and Memorandum in opposition to Defendants' Motion (the "Response").  Plaintiff's Response is supported by the following

---

513 (2d Cir. 1917) (plaintiff's play, "The Woodsman," held infringed by the motion picture, "The Strength of Donald MacKenzie"); *Stonesifer v. Twentieth Century-Fox Film Corp.,* 48 F. Sup. 196 (D.C. Cal. 1942) *aff'd* 140 F2d 579 (9th Cir. 1942) (plaintiff's copyrighted, unpublished dramatic composition, "Women's Hotel," held infringed by the motion picture, "Hotel For Women").

1   Memorandum, the Controverting and Separate Statement of Facts in support thereof and

2   the entire record in this matter.

3   \\\

4   \\\

5   \\\

6   **MEMORANDUM**

7   **I.    BACKGROUND**

8         In 1990, after 19 years of original research, writing and design, Michael Shoen

9   published an extraordinary 365-page book titled "The Cobra-Ferrari Wars 1963-1965."

10  The dust jacket describes it as "[t]he true story of Carroll Shelby's war against Enzo

11  Ferrari, and the cars and the men who made racing history."  Copyrighted in 1988, the

12  book promptly won "Book of the Year" in England and "Best Book in the Field of

13  Automotive History" in the United States.  It received superlative reviews throughout the

14  English–speaking world: "spectacular," "stunning," "the best," "amazing," "heartfelt,"

15  "glorious," "brilliant,"  "essential," "wonderful," etc.  [Plaintiff's Separate Statement of

16  Facts ("Pl's SSOF") 1 & 2] The book is now in its second edition, which is also

17  copyrighted. [Pl's SSOF 3]

18        Some ten years later, Shoen was approached by Defendant Richard Symons, who

19  requested permission to use the title "The Cobra-Ferrari Wars" for a BBC film

20  documentary.  [Pl's SSOF 4]   In a letter to Shoen, Symons wrote:  "As discussed, if you

21  could grant me permission to use the title of your book I'd be very grateful."  [*Id.*]

22        Shoen granted Symons permission "for the limited purpose of titling or identifying

23  [his] film," under the condition that the usage would be clearly attributed to Michael

24  Shoen, and be "one-time . . . with no sequels or part-twos."  [Pl's SSOF 5] Symons

25  breached the agreement he had with Shoen by using the phrase "The Cobra-Ferrari Wars"

26  for (a) the BBC documentary **without** attribution, and (b) a two-disc DVD set sequel.

27  [Pl's SSOF 6] Symons also acquired, and used, the Internet domain names  that included

28  "cobraferrariwars", further  perpetuating  the  confusion  between  Shoen's  book  and

Symons's DVD set.  Shoen's attempts to settle the matter failed due to Symons' lack of cooperation.  [Pl's SSOF 8]

**II.     UNDISPUTED FACTS**

On December 13, 2006, Michael Shoen filed a Verified Complaint in this Court, seeking to enjoin Defendants from breaching the parties' 2001 and other relief. (Case No. 2:06-cv-03008-DGC; *Shoen v. Symons et al.*) [Pl's SSOF 9]

After Defendants obtained and considered the pleadings, they decided not to retain counsel but instead agreed to stipulate to the permanent injunction Plaintiff sought, in exchange for Plaintiff agreeing to dismiss the rest of the case.  [Pl.'s SSOF 10 & Ex. A thereto]  Based on Defendants conceding (in the Stipulation they executed) the merits of the injunctive relief sought by Michael Shoen, on March 23, 2007, this Court entered Permanent Injunction (the "Injunction"), which contained the stipulated terms.  [Pl.'s SSOF 11]  The purpose of the Stipulation and the Injunction was to enjoin Defendants from using the phrase in any manner that would associate their DVD with Plaintiff, his book or his website.  [Pl's SSOF 22]

Pursuant to the Injunction, Defendants are permanently enjoined from (a) using the title "The Cobra-Ferrari Wars," or any portion thereof, in any form and/or medium whatsoever, including, but not limited to, in e-mail and Internet addresses and meta tags [Pl.'s SSOF 12]; (b) selling, marketing or allowing to sell or market (and were supposed to immediately destroy) all sets of the DVD that was subject of the 2006 law suit, i.e., DVD titled "The Cobra-Ferrari Wars." [Pl.'s SSOF 13];(c) employing any means, which would have indicated to the public that their product was in any way authorized by or associated with Plaintiff, and they were not to use Plaintiff's name or the book title. [Pl.'s SSOF 15]  The Injunction allowed Defendants to continue selling the subject DVD set, so long as it was re-published under an entirely different title, and did not include the phrase "The Cobra-Ferrari Wars" or "Cobra" or "Ferrari" or any other language that would suggest "The Cobra-Ferrari Wars" book. [Pl.'s SSOF 14]

1    While Defendants re-published the DVD with a different title, they did not remove

2    the phrase "The Cobra Ferrari Wars" from the movie and it still appears prominently,

3    immediately in the very beginning of the DVD and also as a visual/textual title on the

4    DVD-disc2.  [Pl.'s SSOF 16] (Emphasis added.) **Defendants do not deny it**.

5        Defendants also took a cavalier approach to using the phrase in communications

6    with third parties.  For example, James Bonney, Defendant Spirit Level Films' employee,

7    marketed the DVD as 'The Snake and the Stallion' (aka The Cobra-Ferrari Wars).  [Pl's

8    SSOF 17]   While Defendants allege these were innocent mistakes, among their

9    documents they produced only very few e-mails from and to Mr. Bonney, asserting that

10   he communicated a lot from his private laptop and is no longer employed by Defendant

11   SLF.  It was a curious explanation, as Mr. Bonney's utilized the company's e-mail

12   address.  Thus where he sent to or received the e-mails from, should have been of no

13   moment for the purposes of capturing that correspondence.  Further, the text of various

14   internet announcement by "anonymous" authors, tracks very closely Mr. Bonney's

15   narrative regarding The Snake and the Stallion being "aka The Cobra Ferrari Wars."

16   [Pl's SSOF 23 & Ex. A thereto]   At the time the Complaint in this matter was filed, some

17   vendors still advertised the DVD as "The Cobra Ferrari Wars" although what they ship, is

18   the re-titled version.  [Pl's SSOF 18]

19       Despite the Injunction, Defendants admittedly continued using the phrase they

20   stipulated not to use.  Not only, during the first minute or so of the DVD (and in the

21   internet trailer), the narrator prominently mentions "The Cobra-Ferrari Wars," but also

22   **the phrase "The Cobra Ferrari Wars" appears as a title, on DVD-disc 2**  [Pl's SSOF

23   16], and the Internet searches for the words and phrases prohibited by the Stipulation and

24   Injunction, inevitably lead to Defendants' re-named DVD set, and, conversely, search for

25   the "snake and the stallion" pulls up the DVD set, with the attendant description

26   "formerly known as The Cobra Ferrari Wars."  [Pl's SSOF 19]

27       During his deposition, Defendant Symons testified that (a) he reviewed the

28   Stipulation, before signing it and that it was fairly clearly written and he understood it

1    [Pl's SSOF 20], and (b) he and his company complied with the Stipulation and

2    Injunction.  [Pl's SSOF 21]

3    **III.   LEGAL STANDARD**

4         The legal standard for granting summary judgment is clear, well established and

5    not disputed by the parties.   Rule 56, Federal Rules of Civil Procedure, provides that

6    summary judgment should be granted when there is no genuine dispute about material

7    facts and when the moving party is entitled to judgment as a matter of law. In other

8    words, where there is no genuine factual dispute or if any factual dispute exists it is

9    immaterial to the outcome of the case, summary judgment should be granted. *Celotex*

10    *Corp. v.Catrett*, 477 U.S. 317, 326 (1986).  The moving party has the burden to show that

11    material facts are not genuinely disputed.  To meet this burden, the moving party must

12    point out the lack of evidence supporting the nonmoving party's claim, but need not

13    produce evidence negating that claim.  *Id.* at 325.

14         Once the moving party meets its burden, the nonmoving party must demonstrate

15    that a genuine issue exists by presenting evidence indicating that certain facts are

16    disputed to such an extent that a fact-finder must resolve the dispute at trial. *Anderson v.*

17    *Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).    The court then must view this

18    evidence in the light most favorable to the nonmoving party, must not assess its

19    credibility, and must draw all justifiable inferences from it in favor of the nonmoving

20    party. *Id.* at 255; *Soldano v. United States*, 453 F.3d 1140, 1143 (9th Cir. 2006) (citation

21    omitted).

22    **IV.   DISCUSSION**

23         In their Motion, Defendants allege that the first contract (2001) between Plaintiff

24    and Defendants was "invalid due to Plaintiff's material misrepresentation." [Defs.' Mot.

25    at 8] According to Defendants, the fact that Michael Shoen mistakenly referred in his

26    letter to Defendant Symons to his book as being trademark-registered  [*See* Complaint:

27    Ex. C:  Letter from Symons to Shoen dated September 7, 2001 and Ex. D:  Letter from

28    Shoen to Symons dated September 20, 2001] constituted a material representation

1  invalidating the agreement.  Defendants also allege that the Stipulation (and, therefore,

2  Injunction) is ambiguous and constitutes a contract of adhesion.  Even if Defendants were

3  correct (they are not, as discussed later herein), they have waived these arguments, when

4  they stipulated to the Injunction and are estopped from bringing them now.

5       In addition, in their Motion, Defendants make a new claim, that the 2007

6  Injunction should be dissolved or modified.  However, the Injunction constitutes

7  adjudication of the 2006 case and, therefore, Defendants' allegations are precluded by

8  judicial estoppel and/or *res judicata*.  Further, doctrine of laches precludes re-opening of

9  the 2006 case due to the passage of time (close to four years from the Court Order

10  Defendants seek to vacate or modify) and Defendants waived their claims when they did

11  not assert them in the 2006 litigation.  Defendants never moved for relieve from the 2007

12  Court order and, also in this matter, Defendants did not assert a counterclaim for

13  declaratory judgment or modification of the Injunction.

14     **A.**   **The Stipulation and Injunction Preclude Re-Litigating The Validity of**

15         **the Parties' Contracts**

16       It is the well-established legal principle that issues that were previously

17  adjudicated in earlier proceedings between the same parties should not be re-litigated.

18  Because the parties' 2007 stipulation was reduced to judgment, Defendants are precluded

19  from raising issues that they had conceded in that case.[3]  *See also Brown v. Felsen*, 442

20  U.S. 127, 99 S. Ct. 2205, 60 L. Ed. 2d 767 (1979) (*res judicata* encourages reliance on

21  judicial decision, bars vexatious litigation, and frees the courts to resolve other disputes).

22
23     [3] "The conclusion of the earlier contract lawsuit with a consent judgment does not prevent the earlier judgment from having a *res judicata* effect." *Martino v. McDonald's System, Inc.,* 598 F. 2d 1079 (7th Cir. 1979) *certiorari denied* 1979, 100 S. Ct. 455, 444 U.S. 966, 62 L.Ed.2d 379.  *Compare Rein v. Providian Fin. Corp.*, 270 F. 3d 895, 899-900 (9th Cir. 2001) ( Because of its voluntary nature, a settlement agreement that is not approved by a subsequent court order can have no preclusive effect regarding the question of whether the debt reaffirmed would have been held to be nondischargeable if the nondischargeability issue had been litigated. "Thus, a reaffirmation agreement unaccompanied by a court order is not a final judgment on the merits and cannot be given preclusive effect.") *A fortiori*, contrary is true in opposite circumstances.

24
25
26
27
28

Having conceded the bases for the permanent injunction that was sought by Shoen in the 2006 case, Defendants should not be allowed to revisit the validity and enforceability of the Injunction.   Even if there were any grounds for vacating the Injunction (there are not), the time that has elapsed from its entry is too long.   And, Defendants provided no reasons why they could not assert the same arguments they assert now in the 2006 litigation.  Defendants cite to no law that would give a party to litigation a second bite of an apple for the sole reason that he chose not to consult or retain an attorney or make his arguments in the prior litigation. Thus, whether or not the 2006 litigation was meritorious (Plaintiff asserts it was), once the stipulated Injunction was entered (and in force for  close to four years), Defendants are precluded from raising the issue of the validity of their contracts or any other issues that could have been raised in 2006.

Having said that, even if Defendants were allowed to question the validity of the 2006 or 2001 agreement between them, both agreements were valid.

**B.     The 2007 Agreement between the Parties (the Stipulation that led to the Injunction) is Valid**

In 2007, Symons entered into the Stipulation for Permanent Injunction to avoid costs of litigating the underlying claims, thus obtaining value.  He had a choice to litigate or not, and chose to settle.  He should now be held to that bargain.

**1.     The 2007 Stipulation Is Not "fatally ambiguous"**

Defendants allege that the 2007 Stipulation is ambiguous.  The Stipulation and Injunction that incorporates it speak for themselves.  [Pl's SSOF 11-16]   They do not exist in a vacuum, but were a result of a lawsuit that made specific allegations against the Defendants. Defendants were fully aware that the subject matter of the lawsuit was the breach of the 2001 agreement between Shoen and Symons, in that Symons used phrase "The Cobra Ferrari Wars" in violations of the terms of the 2001 agreement between the parties and that the goal of the lawsuit was to enjoin Defendants from using that phrase in

1   connection with their DVD, *inter alia*, to avoid any confusion as to the origin of the DVD

2   and/or affiliation of the DVD authors with Michael Shoen.[4]

3       It is against this background that the Stipulation and the Injunction must be read.

4   And, if Symons did not understand it, he should not have signed it.  When he signed it, he

5   committed himself to its content. [Pl's SSOF 20] For Defendants to now concoct an

6   argument that the Injunction did not prohibit them from using the phrase "The Cobra

7   Ferrari Wars" to refer to the "former" title of their DVD is as convoluted as it is

8   disingenuous.  Defendants are well aware that the goal of the 2006 lawsuit was to make

9   sure that there is no confusion between the DVD and Shoen's book and that the

10  prohibition on using the phrase was meant (and formulated) in a broadest possible

11  manner.  The interpretation Defendants attempt to urge on the Court is unsupported by

12  the language of the Stipulation and Injunction.  If Symons believed that the Injunction

13  prohibited him from using the definite article "the" or a word "Cobra", he would not have

14  signed the Stipulation.  But he did, because he fully understood what the Injunction

15  meant.  Defendants' argument is absurd.

16      Finally, that counsel for Shoen agreed to issuance of a one-time announcement to

17  the vendors regarding this Court's issuance of injunctive order, cannot be interpreted as a

18  blanket license to use the title in the subsequent **marketing** efforts like those by James

19  Bonney.  [Pl's SSOF 18].  Again, Defendants' argument is absurd.  It is interesting that

20  Defendants rely on *Darner Motor Sales, Inc. v.  Universal Underwriters Ins. Co.*, 140

21  Ariz. 383, 682 P.2d 388 in support of their argument that ambiguities in a contract are

22  resolved against the party who drafted the agreement.  [Defs' Mot. at 13]   First, *Darner*

23  is an insurance case that interprets an automobile insurance policy, where Mr. Justice

24  Feldman stated poignantly that applying "ordinary contract law to insurance policies"

25  results in mischief.  Id. 388, 682 P.2d at 393.   While his warning against inventing

26

27      [4] The DVD, while based on Plaintiff's book, also contains many errors and
    inaccuracies contributed by the Defendants, as pointed out in a complaint BBC received
28  from a viewer. [Pl's SSOF  30]

1  ambiguities where none existed was directed to the courts adjudicating insurance cases, it

2  appears to be well suited to Defendants' argument here.  *Darner* also held that "the law

3  of contracts attempts the realization of *reasonable expectations that have been induced*

4  by the making of a promise."  [*Id.*, quoting 1 Corbin, *Contracts* § 1 at 2 (1963)]  Here,

5  Shoen's reasonable expectation was that—in exchange for Shoen forgoing the

6  litigation—Symons would comply with the intent of the Stipulation he executed.

7

8          **2.       The 2007 Stipulation is not a "contract of adhesion"**

9          Defendants allege that the 2007 Stipulation is a "contract of adhesion" because

10  Shoen's counsel's e-mail presented it to Symons as a "take it or leave it" proposition.  In

11  support, Defendants rely on *Burkons v. Ticor Title Co. of California*, 165 Ariz. 299, 311,

12  798 P.2d 1308, 1320 (Ariz. App. 1989), quoting the definition of adhesion contract as a

13  standardized contract offered on a "take it or leave" it basis, normally drafted and

14  imposed by a party enjoying superior bargaining strength and offered to a weaker party

15  who has no realistic choice to the terms.  [Defs' Mot. at 13]  *Burkons* involved breach of

16  contract and bad faith allegations against an escrow agent. The Arizona Court of Appeals,

17  reversing the trial court, found an escrow contract to be one of adhesion.   Defendants

18  forget to mention that the same opinion quotes from *Schlobohm v. Spa Petite, Inc.*, 326

19  N.W.2d 920, 924 (Minn. 1982) to further expand the definition:  "adhesion contract" is

20  standard, printed form contract offered to the public by an industry so powerful as to be

21  able to effectively impose terms. [5]   Here, **the Stipulation is not such a "standard,**

22  **printed form contract" and Shoen and his counsel are not an "industry capable of**

23  **imposing terms" on Symons**.  Symons is an intelligent, educated individual, who could

24  have retained counsel but chose to act as his own lawyer in the 2006 case.   He could

25  have proposed other terms that those offered by the Stipulation or could have decided to

26  litigate, like he did in the matter currently before the Court.  But he chose to accept the

27  ───────────
          [5] *Burkons* was reversed by the Arizona Supreme Court. 168 Ariz. 345, 813 P.2d
28  710 (1991).  The reversal did not discuss the definitions of contract of adhesion.

1    Stipulation and he should be bound by it, now.  Likewise, Symons could have removed

2    the phrase "The Cobra Ferrari Wars" from the re-mastered DVD discs, in compliance

3    with the parties' agreement.  But he chose not to do it, apparently believing that leaving

4    the phrase in the DVD and goodwill that comes with it would benefit him.

### 3.    The Stipulation Is Not Against Public Policy

6           Defendants argue that the Stipulation (and by inference also the Injunction) is against

7    public policy, because it enjoins them from using the phrase "The Cobra Ferrari-Wars" that is the

8    title of Michael Shoen's book.  Defendants err.  That the phrase used by Michael Shoen in other

9    contexts is also a title of his book does not change the fact that it also is a trademark, although

10   unregistered at the time, and that using it may affect the goodwill of Shoen's book and related

11   endeavors. In *1800 Ocotillo, LLC v. WLB Group, Inc.*, 219 Ariz. 200, 196 P.3d 222 (2008), on

12   which Defendants rely, the Arizona Supreme Court actually found that the contested contractual

13   clauses were not contrary to public policy (vacating contrary opinion  of the Arizona Court of

14   Appeals and remanding). [6]  Again, Defendants had a choice in the 2006 case to consult an

15   attorney and litigate the issues they now raise, but they chose not to do it.

17          Defendants argue also that the Injunction should be dissolved or modified to

18   prevent "consumers' confusion."  [Mot at 15]  However, the confusion they refer to is one

19   they created, between their own former product and their own re-titled product.

20   Defendants provided no evidence of confusion between their two sets of DVDs, but even

21   if there was some anecdotic evidence, any "confusion" between their own products is of

22   Defendants' own doing and they should be the ones remedying it. (Perhaps the best way

23   to avoid that confusion would be if Defendants stopped selling any more "confusing"

24   DVDs altogether.)   Defendants have admitted to having sold approximately 10,000

---

26          [6] The case involved a dispute between real estate developer and an engineering
27   firm. Plaintiff in that case argued that certain liability limiting clauses in a contract were
     not enforceable as against public policy. Mr. Justice Bales held that they were not
28   contrary to public policy.

1   copies of DVD, since 2008. [Pl SSOF 31] They have provided no evidence of buyers'

2   confusion of their two versions of DVD.

3         **C.**    **The 2001 Agreement Between the Parties was Valid**

4         Defendants allege also that the 2001 agreement between Shoen and Symons was

5   void, because of the fact that Shoen, in his letter responding to Symons, referred to the

6   Cobra-Ferrari Wars as trademark-registered.   Defendants allege that this constituted

7   "material representation."   [Defs' Mot at 8]   Defendants forget that it was Richard

8   Symons who contacted Michael Shoen in 2001, asking for permission to make a movie

9   with the same title about similar topic, without mentioning the trademark.  [PL's SSOF 4]

10  Symons wanted to use the same phrase, because he clearly understood that the book's

11  success would help promote his movie by association.   Unambiguously, he believed that

12  he needed Shoen's permission, before he received Shoen's written response.

13  Consequently, he could not have relied on any "representation" Shoen made in that letter.

14  Nowhere in his disclosures or other testimony does Symons allege that, when he asked

15  Shoen's permission, he did it because Shoen first told him the phrase or the book or the

16  title was trademark-registered. Shoen clearly confused, at the time, the registered

17  copyrighted status of his book with trademark registration.  Notwithstanding, while yet

18  unregistered, "The Cobra-Ferrari Wars" was protected under the common law and the

19  Lanham Act.[7]  [And, while Defendants make much of the fact that Shoen is an attorney

20  by education, and practiced in the past, they ignore the rest of his deposition testimony,

21  where he stated that he practiced in the areas of product liability and criminal law, not

22  intellectual property law.  [Pl's CSOF 16 & SSOF Ex. A]

23        While an unregistered trademark does not benefit from the protection afforded to

24  trademarks through registration, it may however benefit from protection due to other

25  features of the law in relation to trademarks, such as protection for unregistered marks. It

26

27  ——————————————

28       [7] Michael Shoen's application for trademark registration is pending.  [Pl SSOF Ex. D]

results from passing off law[8] (a common law tort that may be used to enforce rights in unregistered trademarks, such as the goodwill of a trader from a misrepresentation that causes damage to that goodwill). The registration, both federal or state, is not required to obtain rights in a trademark. An unregistered mark may still receive common law trademark rights. An unregistered mark may also be protected under the Lanham Act's (15 USC § 1125) prohibition against commercial misrepresentation of source or origins of goods.

Further, the agreement between Shoen and Symons was not just Shoen's permission for Symons to use the phrase in some random setting.  Rather, it was a permission to use it for a film about the same events, which was based on Plaintiff's book, and—under the parties' agreement—was supposed to have attribution: "based on…" and "with permission…"; it was also supposed to be for a single broadcast. [Pl's SSOF 5]   In short, while The Cobra-Ferrari Wars was not a registered trademark, it was a trademark nevertheless and Shoen gave permission to Symons to use it, under specified conditions.  Even if The Cobra-Ferrari Wars" were not a trademark, as stated before, Symons did not ask permission to use it because he sought it was.  The parties' 2001 agreement was valid.

Symons breached that agreement by failing to attribute the movie to Shoen's book, while basing the movie on the book and using the same phrase as Shoen coined for his book (and, in addition, exceeded the agreed upon number of broadcasts).  Finally, even if

---

[8] The common-law tort of  passing off has been described as follows:
> "Beginning in about 1803, English and American common law slowly developed an offshoot of the tort of fraud and deceit and called it 'passing off' or 'palming off.' Simply stated . . .  a tort consists of one passing off his goods as the goods of another. In 1842 Lord Langdale wrote: 'I think that the principle on which both the courts of law and equity proceed is very well understood. A man is not to sell his own goods under the pretence that they are the goods of another man....'"

1 J. McCarthy, Trademarks and Unfair Competition § 5.2, p. 133 (2d ed. 1984) (McCarthy) (footnotes omitted).

the 2001 contract were void in its entirety (it is not), the argument is waived and barred by laches (nine years passed since Shoen and Symons entered into 2001 agreement) and also, as discussed herein, because Symons conceded it by agreeing to stipulate to the 2007 Injunction.


**CONCLUSION**

For all the forgoing reasons, Defendants' Motion should be denied.  If the Court finds that the 2007 Stipulation constitutes a valid contract and that both it and the resulting Injunction were breached, the Court is free to enter a judgment it in favor of a nonmoving party.  *Celotext*, supra.

Dated:  December 23, 2010.

LAW OFFICE OF MARIA SALAPSKA, PLLC


By  s/  Maria Salapska
    Maria Salapska
    3001 East Camelback Road Suite 120
    Phoenix, Arizona  85016

*Attorney for Plaintiff*

1
2

**CERTIFICATE OF SERVICE**

3
4
5

I certify that, on December 23, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/EFC System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

6
7
8
9

John D. Titus
DICKINSON WRIGHT PLLC
5009 E. Washington, Suite 125
Phoenix, Arizona 85034
*JTitus@DickinsonWright.com*

10

*Counsel for Defendants*

11
12
13

I certify also that, on December 23, 2010, I also transmitted the attached document to the above stated counsel for defendants via e-mail.

14
15
16

s/ Maria Salapska

17
18
19
20
21
22
23
24
25
26
27
28